## Tax Review Board v. Weiner.

Argued November 23, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

reargument refused February 26, 1960.

*Abraham Weiner,* appellant, in propria persona.

*Karl I. Schofield,* Assistant City Solicitor, with him *Yale B. Bernstein,* Assistant City Solicitor, and *David Berger,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 18, 1960:

The appellant in this case, Abraham Weiner, who presented and argued his case in personam, is a stickler for his rights, as, of course, he has the right to be, whether he knows or not what they are. He complains that the City of Philadelphia did not have the right to charge him in the amount of $189.10 (or, presumably, in any amount), for excess water and sewer services rendered to his premises at 1509 N. 13th Street, for the period from January 28, 1957 to May 1, 1958.[1] He complains that the city used an invalid ordinance in drafting the charge, it delayed in formulating the charge, that it misapplied the ordinance in making the charge, and that it violated tax board decisions, the Philadelphia Home Rule Charter and court decisions in submitting the charge.

In all these protestations, Weiner does not once state that he did not consume the water with which he stands charged or that he did not make use of the sewer services for which he refuses to make payment. A study of the record indicates that his legal claim is

---

[1] The minimum charge had previously been billed to and paid by the appellant.

as lacking in jurisprudential support as his appeal falters in moral conviction.

Weiner contends that the City must read his water meter within one year from the last reading and that, failing to do so, he is immune from excess water and sewer bills. He also argues that he must be billed on a yearly basis and that, since the bill in this case was for a 16-month period, it perforce is invalid. But the visits of the meter reader to Mr. Weiner's home were not as far apart and as unknown and as unrecorded as Mr. Weiner would suggest. The record shows the bill for excess charges to Mr. Weiner were based on meter readings made January 28, 1957, February 13, 1957, June 10, 1957, June 11, 1957 and May 1, 1958.

Weiner cites Section 6-201(c) of the Philadelphia Home Rule Charter in assumed support of his position. This section says: "The Department shall collect all water and sewer rents due to the City. It shall cause all water meters to be read punctually by its employees. Bills for water and sewer rents shall be mailed to the owners of the properties against which they are charged." It will be noted from this quotation that the meters shall "be read punctually," and that the bills "shall be mailed to the owners of the properties against which they are charged." No time table is set up as to when the bills should be mailed. The only limitation in time would be the applicable statute of limitations in the Act of May 16, 1923, P. L. 207, §9, 53 P.S. §7143, as amended, which provides that liens for water and sewer charges must be filed "on or before the last day of the third calendar year after that in which the . . . rates are first payable."[2] Thus, the City had three

[2] Since this case was heard in the court below, this limitation was removed by the Legislature on September 23, 1959 which abolished all time restrictions on the filing of municipal liens except in certain cases not here material.

years from the date of the first reading (January 28, 1957) to lien Weiner's property for the applicable charges.

It might be said at this point that while the City may wait three years within which to act to enforce payment of water and sewer charges, conscience and good administration dictate that it not wait that long nor indeed wait at all (consistent with convenience and efficiency) to send bills to the water users.

Philadelphia's Water Regulation No. 17, enacted pursuant to Section 5-801 of the Philadelphia Home Rule Charter, effective January 1, 1952, sets out the minimum charges and quantities of water allowed, and states that the "billing for the minimum charge shall be made on the annual basis," and that "excess water bills may be rendered for periods less than one year, depending upon the quantity of water consumed."

Obviously the annual billing required by this regulation applies only to minimum charges and does not prohibit the rendering of excess water bills for periods more than a year.

The appellant Weiner, in his brief filed with this Court, says: "The rendering by the City of Philadelphia of 'BILL FOR EXCESS WATER & SEWER RENT' to this appellant violates Ordinance of December 2, 1916, because appellant being a meter account can only be billed for water consumption and not Water Rent." The ordinance here referred to was replaced by Section 5-801 of the Philadelphia Home Rule Charter, effective January 1, 1952: "Rates and Charges. In accordance with such standards as the Council may from time to time ordain, the Water Department shall fix and regulate rates and charges for supplying water . . . and for supplying sewage disposal services." Water Regulation No. 17, above mentioned, was enacted as a result of this provision in the Philadelphia Home Rule

Charter, and provides: "All water used in excess of the amount of water allowed within the minimum annual rates shall be charged for at the rate of ninety ($.90) cents per thousand (1,000) cubic feet." This method of assessment was upheld in *Monaghan v. City of Philadelphia,* 5 Pa. D. & C. 2d 329 (decision unappealed.) Then Sewer Regulation No. 2 fixes the sewer rates at a stated percentage of the water charges. This method of assessment was upheld by this Court in *Gericke v. Philadelphia et al.,* 353 Pa. 60.

There is no basis whatsoever for striking down the perfectly valid bill sent to the appellant Weiner.

Among his other untenable arguments, the appellant insisted he was entitled to a jury trial on the issue he raised. Sacred and inviolable as is the right of trial by jury, it does not apply in this case. The Tax Review Board was created by the Council of the City of Philadelphia (1953 Ordinances, p. 478) under the authority of Sections 3-100(f) and 6-207 of the Philadelphia Home Rule Charter. Such a board was unknown to the Common Law and was not part of the law of the land when the Constitution of Pennsylvania was adopted. In *Commonwealth v. Bechtel,* 384 Pa. 184, this Court said, as it had often said before: "Constitutional guarantee of trial by jury does not prevent the legislature (a) from creating or providing modes or tribunals other than a jury trial for the determination or adjustment of rights and liabilities which had not been triable by jury prior to the Constitution."

The judgment of the court below is affirmed, with costs on the appellant.

Mr. Justice BOK concurs in the result.