536 A.2d 875

Upper Gwynedd Township Authority *v.* Abraham and Edythe Roth, Husband and Wife. Edythe Roth, Appellant.

240

Argued June 8, 1987, before Judges MacPhail and Barry, and Senior Judge Barbieri, sitting as a panel of three.

*Jules Pearlstine,* with him, *C. Stephens Vondercrone, Jr., Pearlstine/Salkin Associates,* for appellant.

*Marlyn F. Smith,* Solicitor for Upper Gwynedd Township Authority, and *Josele Cleary, High, Swartz, Roberts & Seidel,* for appellee.

OPINION BY JUDGE BARRY, February 3, 1988:

This is an appeal brought by Edythe Roth[1] (appellant) from an order of the Court of Common Pleas of Montgomery County denying her motions for post-trial relief in the nature of a new trial or judgment non obstante veredicto. After a careful review of the record, we affirm.

The appellant is the owner of two tracts of land in Upper Gwynedd Township. One parcel consists of 22.156 acres and is located on the southwest side of Hancock Street (southwest parcel) which is vacant and wooded. The second parcel consists of 139.996 acres and is located on the northeast side of Hancock Street (northeast parcel) on which are the Roth residence and farm.

On April 19, 1972, the Upper Gwynedd Township Authority (Authority) passed a resolution authorizing the construction of a sanitary sewer system along, *inter alia,* Hancock Street. On June 12, 1972, the Township enacted an ordinance approving the Authority's construction plans and authorizing the assessment of the properties benefited by the sewer system.

During the course of construction of the sewer system along Hancock Street the Roths asked the Authority to extend the sewer line 2,050 feet onto the northeast parcel. The Roths granted the Authority a twenty-five foot easement for the extension and paid for the construction of it.

Also, during the course of construction along Hancock Street the Roths granted the Authority a twenty-five foot sewer easement through the southwest parcel. A resolution for a Declaration of Taking for this ease-

---

[1] Mrs. Roth acquired the subject property jointly with her husband, Abraham Roth, as tenants by the entireties. Mr. Roth died on February 13, 1983, thereby vesting sole ownership in Mrs. Roth by right of survivorship.

ment was passed by the Authority. The Declaration was filed on October 13, 1972.

On August 1, 1973, the Authority enacted a resolution accepting its engineers' recommendation that the construction of the project had been completed and authorizing the assessment for the work.

On March 4, 1982, the Authority filed a municipal claim against the southwest parcel. The claim was for 700 feet at $11.575 per foot for an assessment of $8,102.50 plus a 5% penalty of $405.13 or a total claim of $8,507.63. On March 5, 1982, the Authority filed a municipal claim against the northeast parcel. The claim was for 1699.38 feet at $11.575 per foot for an assessment of $19,670.32 plus a 5% penalty of $983.52 or a total claim of $20,653.84. Since the issues are identical, the separate appeals as to the two liens have been consolidated.

A scire facias issued on the claims. After a non-jury trial an order was entered by the trial judge finding the sewer assessments valid and proper. Following a denial of her motions for post-trial relief and a judgment being entered, Mrs. Roth appealed to this court alleging various errors.

First, she argues that the trial court erred in not granting her motion for judgment n.o.v. inasmuch as the liens were time barred. She argues that 53 P.S. §7143[2] provides that municipal liens must be filed within six months of the completion of construction and the Authority filed the liens in question some nine years after construction of the Hancock Street sewer project was completed.

The trial court rejected this argument finding that 53 P.S. §7432[3] allows a municipality to file a claim *at*

---

[2] Act of May 16, 1923, P.L. 207, Section 9.
[3] Act of September 23, 1959, P.L. 955, Section 1.

*any time.* We agree. That statute provides in pertinent part:

> Whenever, heretofore or *hereafter,* any . . . township . . . or municipality authority has failed to file . . . any municipal claim assessed against any property within the time limit required by law for such filing, whereby the lien of such . . . municipal claim is lost; . ... then, in any such case heretofore or *hereafter* occurring, any such . . . township . . . or municipality authority may, *at any time after the effective date of this act,* file such . . . municipal claim. . . .

(Emphasis added.)

It is well settled that this section removes all time limitations on the filing of municipal claims. *Chartiers Valley School District v. Virginia Mansions Apartments, Inc.,* 340 Pa. Superior Ct. 285, 489 A.2d 1381 (1985), *Sanft v. Borough of West Grove,* 63 Pa. Commonwealth Ct. 366, 437 A.2d 1332 (1981), *Tax Review Board v. Weiner,* 398 Pa. 381, 383 n.2, 157 A.2d 879, 881 n.2 (1960).

However, Mrs. Roth makes the additional argument that 53 P.S. §7432 was impliedly repealed by 53 P.S. §7453[4] inasmuch as the two are irreconcilable and the latter was enacted subsequent to the former. Further, she argues that the application of §7453 does not operate to validate the township's liens in this case since they were not filed prior to the effective date of §7453, *i.e.,* July 22, 1969.

We must disagree with Mrs. Roth inasmuch as §7453 is not applicable to liens filed by municipal authorities. That section specifically enumerates its applicability to liens filed by councils of third class cities and boroughs, commissioners of first class townships and

---

[4] Act of July 22, 1969, P.L. 176, Section 1.

boards of supervisors of second class townships. In contrast, §7432 was amended in 1963[5] to specifically include validation of liens filed by municipal authorities. Accordingly, we find that sections 7432 and 7453 are not irreconcilable with respect to liens filed by municipal authorities,[6] since the liens filed in this case were validated by §7432 and therefore are not time barred.

Mrs. Roth argues further that the Township is the true assessor here since its ordinance authorized the levy of assessment for the construction. We must disagree. Our review of the Authority's resolution reveals that it does not provide for the collection of the assessments by the Township. *Compare Hempfield Township Appeal*, 102 Pa. Commonwealth Ct. 514, 518 A.2d 1314 (1986) (where an Authority's resolution specifically provided for the collection of assessments by the Township thereby giving rise to the assessment rules as set forth in The Second Class Township Code rather than those set forth in the Municipality Authorities Act of 1945.) Further, it is well-recognized that an "[a]uthority is the agent of the State and not the child of the incorporating municipality," *Whitemarsh Township Authority v. Elwert*, 413 Pa. 329, 333, 196 A.2d 843, 847 (1964). Accordingly, we refuse to apply §7453 as it relates to second class townships since the Authority made the assessment in this case.

Mrs. Roth makes the argument, in the alternative, that the imposition of the liens on her property pursuant to the validation statute, is unconstitutional and deprived her of due process. We disagree. In *Sager v.*

---

[5] Act of June 21, 1963, P.L. 177, Section 1.

[6] We necessarily leave for another day and an appropriate case the question argued by Mrs. Roth of whether §7453 impliedly repeals those portions of §7432 which address the same errors in the filing of liens made by political subdivisions covered by both statutes.

*Burgess,* 350 F. Supp. 1310 (E.D. Pa. 1972), *summarily affd,* 411 U.S. 941 (1973), the ·constitutionality of the Pennsylvania Municipal Claims Act[7] was· challenged on the basis that a municipal claim was permitted to be filed without first giving the property owner written notice of an intention to so file. The United States District Court for the Eastern District of Pennsylvania, as affirmed by the United States Supreme Court, rejected this argument primarily on the basis that Section 16 of the Act, 53 P.S. §7184, provides the· property owner with an opportunity to file and serve a ·notice on the municipality to issue a writ of scire facias and further may raise any defenses to the claim in an affidavit of defense.

We find that inasmuch as the same procedure is available to a defendant whose property is the subject of a claim filed by a municipality or authority which· is validated by a validation statute, Mrs. Roth's constitutional argument must fail.[8]

Mrs. Roth also argues that the assessment as·to the southwest parcel was improper· inasmuch as the Hancock Street sewer did not confer a benefit on the property.[9] Whether her property was benefited by the in-

---

[7] *See* footnote 2, *supra.*

[8] Mrs. Roth also argues that interest should not·be assessed as of the date of completion of the construction ¡but only, if at all, from the date that the claims were filed and that the assessment of interest from the date of completion is an unconstitutional denial of due process. Since Mrs. Roth did not raise this as a defense in her Affidavit of Defense, we will not address it here.

[9] We note that before the trial court Mrs. Roth also raised the issue of whether the northeast parcel was benefited by the sewer line installation. The issue was decided by the trial court against her but Mrs. Roth does not argue before this court that the trial Court erred with respect to the northeast parcel. Accordingly, we will consider that argument to have been abandoned.

stallation of the sewer line is a question of fact. *Riehl v. Millcreek Township Sewer Authority,* 64 Pa. Commonwealth Ct. 513, 441 A.2d 466 (1982), *Palmer Township Municipal Sewer Authority v. Witty,* 479 Pa. 240, 388 A.2d 306 (1978). Accordingly, we will not disturb the trial court's conclusion[10] that the parcel was benefited so long as it is supported by substantial evidence in the record. *Riehl.*

After reviewing the record we agree with the trial court. The law presumes that property is benefited by the construction of a sewer. This presumption may be rebutted but Mrs. Roth has failed to do so in this case. *Palmer, supra.*

Her argument to rebut the presumption is based on the fact that in 1972 the Authority was granted an easement across the parcel for the purpose of installing a trunk line. A Board of View determined the amount of damages to be awarded to the Roths based on the condemnation. Mrs. Roth argues that in order to determine the amount of that award the benefits to the property of the installation of the line were considered. Therefore, she says, the assessment of this parcel for the installation of the Hancock Street line was improper inasmuch as it amounts to a second assessment of benefits for the same sewer system. We cannot agree.

We agree that the condemnation proceeding necessarily considered the benefits to the southwest parcel. However, that proceeding was to render an award for the *trunk line* which runs through the property. The assessment in question here is for the sewer line installed on Hancock Street. Each line could confer inde-

---

[10] The trial court opinion states as a conclusion of law, "The property was benefited by the construction of the Hancock Street sewer lines." (Opinion at 22.) We find this characterization to be harmless error particularly inasmuch as the trial judge was the fact finder in this non-jury trial.

pendent benefits on the parcel. Mere determination of the benefits conferred upon the parcel by the trunk line does not preclude a finding of benefits conferred on the same parcel by the installation of the Hancock Street sewer line. *See Riehl,* (where property was assessed for the installation of two sewer lines).

Here, the trial court found the southwest parcel was zoned R-2 (residential). As such, the parcel is capable of being subdivided. Accordingly, although no structure existed on the parcel at the time of the installation of the sewer line to make use of it, the possibility exists that the parcel could be subdivided and developed thereby benefiting from the sewer line installation. *Riehl.* We agree with the trial court's analysis.

Mrs. Roth argues that the trial court erred in considering a subdivision plan for the parcel prepared at the Roths' request at the time the sewer line was installed. She argues that she neither developed the parcel in accordance with that plan nor does she intend to develop the parcel. Neither contention is relevant here. The only relevant factor with respect to the benefit conferred on the southwest parcel is that the property is *capable* of subdivision. Therefore, the trial court's consideration of the subdivision plans, if error, was harmless inasmuch as it ultimately reasoned that the parcel was benefited due to the *ability* to subdivide, not an *intention* to subdivide or *actual* subdivision.

Having determined that the liens were filed in a timely manner and that the southwest parcel was benefited by the sewer line installation, we must now address Mrs. Roth's argument with respect to the method of assessment. She argues that the trial court erred in its finding that the two parcels are urban in character which resulted in the property being assessed by the front-foot method. She contends that a proper review of the evidence mandates a finding that the property is ru-

ral and should be assessed by a board of viewers. Mrs. Roth argues that the trial court erred in failing to find the property to be rural inasmuch as the northeast parcel has always been operated as a farm and the southwest parcel has never been developed. Further, some 1,015 acres in the vicinity of the Roth property are farmland or vacant. Clearly, this evidence demonstrates that there was a dispute as to the character of the property. Unfortunately for Mrs. Roth the trial court apparently found more persuasive the evidence presented which tends to show that the property is urban in character, *i.e.*, the presence of service stations, restaurants and three industrial buildings in the area as well as the existence of numerous housing developments along portions of the perimeters of the parcels containing some 240 homes in the aggregate.

The trial court carefully examined all the evidence presented and our examination of the record shows that the trial court's finding is supported by substantial evidence and we will not disturb it on review.[11]

Based on the foregoing, we affirm the sound decision of Judge WILLIAM T. NICHOLAS.

### ORDER

NOW, February 3, 1988, the order of the Court of Common Pleas of Montgomery County at Nos. 82-03333 and 82-03352, dated August 7, 1986, is hereby affirmed.

---

[11] Whether property is rural or urban is a question of fact for the fact-finder. *McKeesport v. Soles,* 165 Pa. 628, 30 A. 1019 (1895).