**David KELLER, Appellant**

v.

**Scranton City Treasurer, Ryan McGOWAN.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 12, 2011.
Decided Sept. 30, 2011.

David Keller, appellant, pro se.

Gina Elizabeth McAndrew, Scranton, for appellee.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Appellant David Keller (Keller), *pro se,* initiated an action for declaratory judgment in the Court of Common Pleas of Lackawanna County (trial court) on April 7, 2009. In his complaint, Keller challenges efforts by the City of Scranton (City), its treasurer, and/or various third-parties to collect from him allegedly unpaid fees and taxes relating to fourteen (14) parcels of real estate in the City, which Keller purchased at Lackawanna County tax upset sales. By Order dated October 15, 2010, the trial court entered judgment in favor of the named defendant, Appellee Scranton City Treasurer Ryan McGowan (Treasurer), and dismissed Keller's action with prejudice. For the reasons set forth below, we reverse the trial court's Order and remand for further proceedings.

According to the complaint, Keller purchased the properties at issue between 2006 and 2008. Sometime after he purchased the properties, Keller received notices from the City, the Treasurer, and/or its third-party collection agency—NCC, a division of Commonwealth Financial Systems, Inc.—that there were delinquent City taxes and fees attributed to the properties, some of which dated as far back as 1993. Keller avers that the Treasurer is attempting to collect these amounts, inclusive of interest and attorneys' fees, against him, as the current owner of the properties.[1] Though Keller confesses in his com-

---

1. In their briefs, both the Treasurer and Keller represent to the Court that he no longer holds title to seven (7) of the properties. This representation, however, does not appear to be a fact of record on appeal to this Court. Accordingly, we will not consider it in our disposition of this matter.

plaint that he does not know, in every instance, the amount the Treasurer is seeking as to each property, he avers that the amount which the Treasurer seeks to recover from him with respect to all fourteen (14) properties exceeds $87,000.00.

In support of his challenge to the collection efforts, Keller cites to a portion of Section 9 of the Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. § 7143, commonly known as the Municipal Claims and Tax Liens Act (Tax Liens Act), which provides:

> Claims for taxes, water rents or rates, lighting rates, power rates and sewer rates *must be filed in the court of common pleas of the county in which the property is situated.* . . . All such claims *shall be filed on or before the last day of the third calendar year after that in which the taxes or rates are first payable.* . . .

(Emphasis added.) With respect to each of the fourteen (14) properties, and in the corresponding counts addressed to each property, Keller avers that "[a]t this time there are no such claims filed for the subject property." In other words, Keller alleges that at the time of the filing of his complaint with the trial court in April 2009, the City had not filed any tax claims against Keller or any prior owners of the properties with respect to the alleged unpaid taxes and fees.

Keller also cites to a portion of Section 1 of the Act of September 23, 1959 ("1959 Act"), *as amended,* 53 P.S. § 7432. Though lengthy, the relevant portion of the statute provides:

> Whenever . . . any . . . city . . . has failed to file in the office of the prothonotary of the county, any tax claim or municipal claim assessed against any property within the time limit required by law for such filing, *whereby the lien of such tax or municipal claim is lost;* . . . then, in any such case heretofore or

hereafter occurring, any such . . . city may, at any time after the effective date of this act, file such tax or municipal claim . . . and such claim . . . shall be a valid claim . . . and be a lien upon the real estate upon which it was a lien at the time the claim was filed . . .: Provided, That the lien of any such claim . . . *shall not reattach against any real estate transferred to any purchaser before such claim is filed or during the time when the lien of any such tax or municipal claim was lost,* nor shall the lien of any such claim . . . impair or affect the priority of the lien of any mortgage or other lien which gained priority because of the failure of the . . . city . . . to file such claim . . . or was entered of record during the time the lien of such tax or municipal claim . . . was lost. . . .

(Emphasis added.)

In *Sanft v. Borough of West Grove,* 63 Pa.Cmwlth. 366, 437 A.2d 1332 (1981), this Court opined on the meaning and interrelation of Section 9 of the Tax Liens Act and Section 1 of the 1959 Act:

> The purpose and effect of the two statutes is to establish a three year limitation period for the filing of municipal claims, while allowing a municipality which has failed to file within the three year period to file later—*but with protection for interests which attached while the lien of the municipal claim was lost by reason of the municipality's failure to file timely.* The [1959 Act] serves the public interest in the municipality's receiving payment of its claims *while protecting the rights of intervening purchasers and lienors.*

*Sanft,* 437 A.2d at 1334 (emphasis added). The property owners in *Sanft* sought to strike liens on their property for municipal water rate claims. They argued that because the municipality filed the claims beyond the three (3) year period provided in

Section 9 of the Tax Liens Act, the liens must be stricken. The trial court, relying on Section 1 of the 1959 Act, disagreed, and this Court affirmed, noting that municipal claims can be filed at any time.

Based on our decision in *Sanft* and the statutory language, it is clear that there is no limitations period for a municipality to file a claim to recover unpaid taxes or fees. A delayed claim (*i.e.*, one filed beyond the statutory three (3) year period), however, does have consequences. If the claim is for taxes or fees owed by the current owner of the property, a delayed claim will cause the lien to reattach to the property, but the lien may lose priority to any intervening mortgages or liens.[2] If the delayed claim is for taxes or fees owed by a *former* owner of the property and there is an intervening purchaser, the lien cannot reattach to the property—*i.e.*, it is lost.[3]

Keller also includes in his complaint a citation to Section 1 of the Act of August 24, 1951 ("1951 Act"), P.L. 1409, 53 P.S. § 7197, which provides, in relevant part:

Whenever any real property has been or is hereafter sold at a sheriff's sale by virtue of any writ of execution issued from any court in this Commonwealth, or at a public sale for taxes held by a county tax claim bureau, at which sale sufficient proceeds have been or are realized [4] to pay all tax liens and municipal claims presented against the property, *and a political subdivision has lost or hereafter loses its lien or liens for taxes and municipal claims, or either, on such property by virtue of not having filed or not filing same in the manner prescribed or within the time limited by law to participate in the distribution of the proceeds of such sale, and whenever the purchaser at such sale or any subsequent purchaser furnishes proof to the political subdivision that it has lost any such lien or liens, the political subdivision involved shall satisfy of record any such lien or liens at its expense.*

(Emphasis added.)

Based on these statutory provisions, Keller claims that the Treasurer is barred from asserting a tax claim (or lien) against the properties for any tax years more than three (3) years before the calendar year in which the Treasurer files his claim with the prothonotary of the trial court (which, according to the complaint, the Treasurer still has not filed). Keller reasons that he is an innocent purchaser of the properties at a county tax upset sale. Accordingly, under Section 1 of the 1959 Act, any liens against the properties for which the City failed to file a claim as required under Section 9 of the Tax Liens Act were lost. Section 1 of the 1951 Act, thus, requires the City to satisfy of record any lien or liens for the alleged unpaid and uncollected taxes and fees that are, based on these statutes, lost. Keller prays for an order directing the Treasurer to release all such claims against the properties and to direct the Treasurer to recalculate any valid delinquent tax claims for which the City may still have a lien against the properties.

---

2. Under Section 3 of the Tax Liens Act, 53 P.S. § 7106, tax liens have first lien priority when they initially attach by operation of law to the subject property.

3. Though it is not expressly stated in the Court's decision in *Sanft*, we infer from the Court's analysis and ruling that the property owners in that case were also the property owners who owed the unpaid water bills. In other words, they were not intervening purchasers of the property.

4. The Court notes a typographical error in the reprint of Section 1 of the 1951 Act in 53 P.S. § 7197. Accordingly, the Court has quoted from the official publication in the Laws of Pennsylvania, vol. II, 1951–52, at 1410.

The procedural history of this matter following the filing of the complaint is convoluted. For our purposes, however, we find the following events significant for purposes of this appeal. On May 15, 2009, the Treasurer filed preliminary objections to the Complaint, endorsed with a notice to plead. The Treasurer's first preliminary objection was in the nature of a demurrer based on the Treasurer's claim that Keller misconstrues the applicable statutes and "fails to recognize that liens were filed against the properties of the time periods of 2004, 2005 and 2006."[5] The Treasurer's second preliminary objection was in the nature of a motion to strike the complaint due to the pendency of a prior action. In that preliminary objection, the Treasurer contended that a separate action is pending before the trial court "involving similar and identical issues."

Keller filed his answer to the preliminary objections on June 16, 2009, opposing the Treasurer's preliminary objections. Keller specifically disputed the City's contention that a separate action pending in the trial court, dealing with the demolition of a property or properties, involves the same dispute at issue in his complaint for declaratory relief.[6]

While the preliminary objections were pending before the trial court, Keller filed a motion for summary judgment on April 27, 2010. By Order dated July 28, 2010, the trial court denied the motion for summary judgment, noting in its Order that Keller "fail[ed] to establish the criteria for Summary Judgment in accordance with *Pa. R.C.P. [No.] 1035.2.*"[7]

On September 9, 2010, Keller filed a "Brief in Support of Declaratory Judgment Action." It does not appear from the record that the trial court directed Keller to file a brief, or that Keller obtained leave of the trial court to do so. The brief makes no reference to the pending preliminary objections; rather, it addresses the merits of his claim for declaratory relief and seeks ultimate relief in Keller's favor. The Treasurer, represented by counsel, did not seek to strike the brief as improperly filed. Instead, on September 29, 2010, the Treasurer filed a "Brief in Opposition to Plaintiff's Declaratory Judgment Action." Though the Treasurer's brief notes in the procedural history that preliminary objections are still pending before the Court, the brief addresses the merits of Keller's claim for relief, raises additional facts not contained in Keller's complaint or the preliminary objections,[8] and raises an addi-

---

5. Seeing as the complaint seeks to prevent the City's efforts to collect on taxes as far back as 1993 in some instances, it is unclear to the Court whether the Treasurer's first preliminary objection applies only to one property, some properties, or all of the properties.

6. The certified record from the trial court also reflects that Keller filed a motion to quash the Treasurer's preliminary objections. The Treasurer, however, did not file an answer to that motion. It is possible that the trial court and the Treasurer deemed that motion to quash withdrawn in light of Keller's later filing of his answer to the preliminary objections, which would explain why there is no answer or order disposing of the motion to quash in the certified record.

7. The trial court did not file a separate opinion in support of its Order denying summary judgment. We note, however, that under Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, summary judgment may only be sought "[a]fter the relevant pleadings are closed." Because of the pending preliminary objections, the pleadings were not yet closed at the time Keller filed his motion for summary judgment. Accordingly, the trial court appropriately denied Keller's motion for summary judgment because it was premature.

8. The additional facts are contained at pages 3 through 6 of the Treasurer's brief to the trial court. They include assertions as to (a) how the City bills and collects taxes and fees; (b) how the City entered into a contract with

tional defense not asserted in the preliminary objections.[9] At the conclusion of his brief, the Treasurer asked the trial court for judgment in his favor and dismissal of Keller's complaint with prejudice.

The trial court's October 15, 2010 Order, which is the subject of this appeal, followed. The Order provides:

> **And now,** this 15th day of October, 2010, upon consideration of plaintiff's declaratory judgment action and the briefs and arguments for and against, judgment is entered in favor of defendant and plaintiff's declaratory judgment action is DISMISSED with prejudice.

(Emphasis in original.) Following Keller's appeal to this Court, the trial court filed an Opinion pursuant to Pa. R.A.P. 1925. In that Opinion, the trial court noted that it heard oral argument "on plaintiff's action seeking declaratory judgment" on October 7, 2010. The trial court offered the following reasoning in support of its October 15, 2010 Order:

> NCC to collect delinquent fees; and (c) how the City sold its delinquent real estate claims to the Scranton Redevelopment Authority, which in turn assigned collection rights to Pennstar Bank. The Treasurer also includes these alleged facts in his brief filed with this Court. (Treasurer Br. at 5–6.) In addition, at page 4 of his brief to this Court, the Treasurer alleges:
>
> > A bidder [at a county tax upset sale] does not obtain property free and clear of any taxes or other liens at this type of sale. City of Scranton delinquent real estate taxes are not collected. An announcement to this effect, included in the County's "Conditions for Upset Sale", is made at each Sale. Item 6 of the Conditions for Upset Sale states the following: "Properties located in the City of Scranton are being sold subject to outstanding City taxes and other municipal liens."
>
> We find no record support for this allegation. The Treasurer provides no citations to either the reproduced record or the certified record in support of these or any other alleged facts

> 1) 53 P.S. §§ 7102 and 7107 jointly stand for the proposition that a lien exists in perpetuity against a property based on its assessment by a valid taxing authority;
>
> 2) 53 P.S. § 7143 provides a method for perfecting a lien on a taxed property, but does not constitute a statute of limitations, as the Commonwealth Court has in the past held that its provisions do allow for the filing outside the three year period. *See Sanfit (sic) v. Borough of West Grove* [63 Pa.Cmwlth. 366], 437 A.2d 1332, 1334 (Pa.Cmwlth.1981).
>
> As such, although defendant failed to timely perfect its indefinitely-existing lien on the properties in question, *Sanfit's* (sic) allowance of late-filed municipal claims does not bar future filing and collection of tax claims. Hence, this Court saw fit to reject plaintiff's argument to the contrary.

Keller raises the following questions in his brief on appeal, which we paraphrase for clarification: (1) whether the City's failure to file its tax and municipal claims

set forth in his statement of the case. In this regard, the Treasurer's brief is clearly deficient under Pa. R.A.P. 2117(a)(5). We also note that the Treasurer's statement of the case includes legal argument, which is to be excluded under Pa. R.A.P. 2117(b). This is not to say that Keller's *pro se* filings with this Court and the trial court have complied fully with the governing rules. We admonish both parties and counsel to better familiarize themselves with the rules governing practice in this Court and the trial court. Much of the confusion and complexity of this case was avoidable, as it can clearly be attributed to the parties' and counsel's failure to adhere to these rules.

9. The Treasurer claimed that Keller failed to join indispensable parties, namely the law firm seeking to recover its attorneys' fees for the collection efforts. Failure to join an indispensable party is an authorized preliminary objection under Pa. R.C.P. No. 1028(a)(5). "All preliminary objections shall be raised at one time." Pa. R.C.P. No. 1028(b).

within three (3) years, as required under Section 9 of the Tax Liens Act, bars the Treasurer from collecting said tax and municipal claims from Keller, who is an intervening purchaser; and (2) whether, if said taxes and municipal claims are barred, the associated attorneys' fees claimed against Keller are also barred. Keller argues that both questions should be answered in the affirmative. In substance, Keller contends that the trial court misapplied this Court's decision in *Sanft*. As an intervening purchaser of the properties, Keller claims that the City cannot collect on taxes and fees that predate his ownership because the City failed to file a claim within the three-year period required under Section 9 of the Tax Liens Act.

In response, the Treasurer contends that Section 9 of the Tax Liens Act is not a statute of limitations; rather, it provides only the vehicle for perfecting a real estate tax lien. With respect to Section 1 of the 1959 Act, the Treasurer argues that this section only affects the priority of the tax lien, not its validity. The Treasurer argues that the trial court properly applied *Sanft*. Moreover, the Treasurer argues that Keller is not an intervening, third-party, bona fide purchaser of the properties entitled to any protection from the liens, because he was aware or should have been aware, at the time of the county upset sales, that he was purchasing the properties subject to any unpaid City taxes and fees. Finally, the Treasurer claims that the trial court appropriately dismissed Keller's challenge to the efforts to collect attorneys' fees, because Keller failed to join an indispensable party, namely the attorney to whom the fees are owed.

Neither party addresses adequately the nature of the trial court's decision before us for review. The trial court's order is similarly unclear. Before we can review the trial court's Order, however, we must know the impetus for the Order, as that will tell us what our standard and scope of review are on appeal. Upon review of the certified record, we can eliminate the possibility that the trial court's Order is a grant of summary judgment in the Treasurer's favor. The certified record shows that only Keller filed a motion for summary judgment, which the trial court denied on July 28, 2010. There is no record reference of a jury or bench trial or the submission of the case to the trial court on stipulated facts under Pa. R.C.P. No. 1038.1. Accordingly, we can also eliminate the possibility that the Order represents the trial court's verdict following a trial.[10]

This brings us to the Treasurer's preliminary objections. The fact that unresolved preliminary objections appear in the certified record as of the date immediately preceding the trial court's Order now on appeal further supports our conclusion above that the Order cannot be considered either a grant of summary judgment or a verdict in favor of the Treasurer. Indeed, the trial court could not have acted in either respect, knowing from the record that the pleadings in this case were not yet closed. Thus, the only possibility from the certified record is that the trial court's October 7, 2010 Order is the trial court's action on the Treasurer's preliminary objection in the nature of a demurrer, sustaining the preliminary objection and dismissing Keller's complaint with prejudice.[11] We will, therefore, treat

---

10. In light of this conclusion, we ascribe no significance to Keller's decision to file a post-trial motion with the trial court following the issuance of the Order now on appeal. We accept Keller's representation that the post-trial motion was a prophylactic measure.

11. "The court shall determine promptly all preliminary objections." Pa. R.C.P. No. 1028(b)(2).

it as such and review it accordingly.[12]

In its Rule 1925 Opinion, the trial court's based its dismissal of the Complaint on our decision in *Sanft* and certain statutory provisions, which we summarize above, noting that there is no time limit on a municipality's ability to file and collect on a claim for unpaid taxes and fees. In this regard, the trial court correctly summarized our law. The trial court, however, does not address, and the Treasurer does not address in his brief on appeal, the crux of Keller's complaint. We do not read Keller's complaint as alleging that the City is forever barred from filing a claim to pursue the allegedly unpaid and taxes and fees associated with the properties. Instead, we read Keller's complaint as alleging that the City, because it failed to file such a claim within three (3) years, may not look *to him* to collect those unpaid fees and taxes by asserting liens against the properties. The trial court's opinion simply does not address this claim.

Keller alleges that he did not own the properties at the time the alleged taxes and fees were assessed. He further alleges that when he purchased the properties, the City had not yet filed any claims with respect to those uncollected taxes and fees. Indeed, Keller alleges that as of the date he filed his complaint, the City still had not filed any claims with the prothonotary of the trial court for collection of the allegedly owed taxes and fees. Based on these allegations, and in light of the governing statutes discussed above and our decision in *Sanft*, we conclude that Keller has pled sufficient facts to state a claim for declaratory relief to the effect that while the City is not barred from filing a delayed claim (*i.e.*, beyond the three years provided under Section 9 of the Tax Liens Act) against the *prior owners* of the properties to collect the unpaid taxes and fees that they owe to the City, it has forever lost its *lien against the properties* for those amounts. We, therefore, reverse the trial court's Order, dismissing Keller's complaint with prejudice.[13]

On remand, the trial court must still resolve the Treasurer's remaining preliminary objection, raising the pendency of a prior action. Should the trial court overrule that preliminary objection, the Treasurer will be given an opportunity to file an answer to the complaint, Pa. R.C.P. No. 1028(d), at which time he may deny the factual allegations in the complaint and aver additional facts and defenses under the heading "New Matter," Pa. R.C.P. No. 1030.

### ORDER

AND NOW, this 30th day of September, 2011, the October 15, 2010 Order of the

---

**12.** In reviewing a trial court's grant of preliminary objections, the standard of review is *de novo* and the scope of review is plenary. *Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 961 A.2d 96 (2008). The salient facts are derived solely from the complaint and pursuant to that standard of review, the court accepts all well-pleaded material facts in the complaint, and all inferences reasonably deduced therefrom must be accepted as true. *Connor v. Archdiocese of Phila.*, 601 Pa. 577, 975 A.2d 1084 (2009).

**13.** In his brief on appeal, as noted above, the Treasurer alleges facts and raises additional legal arguments as to why Keller cannot prevail on his declaratory judgment action. At this stage in the proceeding below, however, the only thing properly before the trial court for disposition was the Treasurer's two preliminary objections, neither of which raise the facts and legal issues that the Treasurer now raises in his brief on appeal to this Court. Accordingly, we will not consider them. Instead, the Treasurer should raise these facts and arguments at the appropriate time and in the appropriate manner before the trial court.

Court of Common Pleas of Lackawanna County (No. 09 CV 2314) is REVERSED, and this matter is remanded for further proceedings consistent with the accompanying Opinion.

Jurisdiction relinquished.